```
                    UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION


FEDEX CORPORATE SERVICES,     )
INC.,                         )
                              )
      PLAINTIFF,              )
                              ) DOCKET NO. 1:13-CV-0275-AT
      -VS-                    )
                              )
ECLIPSE IP, LLC,             )
                              )
      DEFENDANT.             )



                  TRANSCRIPT OF MOTION PROCEEDINGS
                BEFORE THE HONORABLE AMY TOTENBERG
                UNITED STATES DISTRICT COURT JUDGE
                    WEDNESDAY, MAY 22, 2013
```

APPEARANCES:

ON BEHALF OF THE PLAINTIFF:

      JASON W. MELVIN, ESQ.
      MATTHEW T. NESBITT, ESQ.
      JEFFREY A. BERKOWITZ, ESQ.

ON BEHALF OF THE DEFENDANT:

      ERIC S. FREDRICKSON, ESQ.
      MATTHEW S. HARMAN, ESQ.


ELISE SMITH EVANS, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
ATLANTA, GEORGIA

1            (Wednesday, May 22, 2013; Atlanta, Georgia.)

2            THE COURT:  Good afternoon.  Please have a seat.

3            We're here on the matter of FedEx Corporation Services,

4    Inc. versus Eclipse, case number 1:13-cv-275.

5            Counsel, would you be so kind as to introduce

6    yourselves?

7            MR. MELVIN:  Yes, Your Honor.  Jason Melvin for FedEx

8    Corporate Services.

9            THE COURT:  And --

10           MR. NESBITT:  Scott Nesbitt, FedEx.

11           MR. BERKOWITZ:  And Jeff Berkowitz also.

12           THE COURT:  Great.  Good to meet you.

13           MR. FREDRICKSON:  Eric Fredrickson for Eclipse IP, LLC.

14           MR. HARMAN:  Matt Harman for Eclipse.

15           THE COURT:  Good.  All right.  Well, we've had some

16   correspondence with you, or Mr. Baumrind has, regarding the

17   question of a covenant and I gather you're not any closer on

18   that?

19           MR. MELVIN:  That's right, Your Honor.

20           THE COURT:  All right.  So that's not a -- means we can

21   resolve this matter at this point; is that right?

22           MR. FREDRICKSON:  I believe so.

23           THE COURT:  All right.  Okay.

24           All right.  Mr. Melvin, are you going to argue, give

25   some oral argument or --

1            MR. MELVIN:  I am on behalf of FedEx, Your Honor.

2            THE COURT:  All right.  Go ahead.

3            MR. MELVIN:  Okay.  May it please the Court, Your

4    Honor, the accused technology here is familiar to most of us, and

5    we've seen it in the recent correspondence between Eclipse,

6    FedEx, and Your Honor.  What happens is when people purchase

7    things online, of course, they expect to receive information

8    about their purchase in an e-mail commonly.  And FedEx' retail

9    shipping customers send those e-mails by working with FedEx

10   Information Services.  And FedEx generates a link, generally a

11   web link, that the retail customers then put into an e-mail and

12   send to the end users.  So, I just wanted at the outset to make

13   sure that we understand those e-mails are what FedEx' customers

14   and FedEx understand Eclipse to be accusing.  And that is, I

15   believe, what the dispute is about regarding the scope of the

16   covenants, whether or not it covers those, such e-mails.

17           And at times in the briefing, Eclipse seems to

18   challenge whether there's a fundamental basis for jurisdiction

19   here regardless of the covenant.  And I would submit that that is

20   beyond dispute given the federal circuit in other courts, cases

21   on customer indemnification liability giving rise to declaratory

22   judgment jurisdiction.  We've seen in the Arris case, which as

23   Eclipse points out was not decided on this issue, but nonetheless

24   pointed out that customer indemnification liability is a valid

25   grounds for declaratory judgment jurisdiction.

1          And Arris cited two other cases that are relevant, one

2  is *ABB vs. Cooper Industries*.  In that case a licensed party was

3  permitted to defend -- file a declaratory judgment suit on behalf

4  of its contract manufacturer based on this idea of

5  indemnification liability.

6          I think another case that is instructive for the Court

7  is Microsoft -- *Microchip Technology vs. Chamberlain Group*.  In

8  that case the federal circuit found there was no jurisdiction in

9  part because Microchip had not established the required -- the

10  required legal interest such as the existence of an indemnity

11  agreement.

12          So -- another problem with the dispute before the

13  Court, I believe, is that in 2007, the Supreme Court in MedImmune

14  changed the analysis for a declaratory judgment jurisdiction.

15  And, so, much of the case -- case law that Eclipse relies on

16  comes from the pre-MedImmune test, which of course was whether or

17  not the plaintiff had a reasonable apprehension of suit.  After

18  MedImmune, we know that now the question is whether there's a

19  substantial controversy between the parties having adverse legal

20  interests of sufficient immediacy and reality.

21          So, it's perhaps unsurprising that pre-MedImmune,

22  customer indemnification liability was a more difficult basis for

23  declaratory judgment jurisdiction, but of course that has now

24  changed.  And I believe there are three key facts to this case

25  that establish beyond a doubt that there is jurisdiction here.

1    First is that there are actual suits by Eclipse against FedEx

2    customers for those customers' use of FedEx technology.  We've

3    seen actual suits that have been filed, we've seen additional

4    filings since this case was filed by FedEx, and threats made by

5    Eclipse.

6            The second fact is that FedEx has service agreements

7    with many of its clients, it's large retail shipping clients, and

8    those service agreements often contain indemnification and

9    warranty clauses that are directed at patent infringement and

10   create a legal relationship between FedEx and its customers.

11           And the third fact that I believe is critical here is

12   that some of the customers with those actual agreements have come

13   to FedEx as a result of Eclipse's suits or threats of suit and

14   have requested indemnification based on Eclipse's actions.

15           So, looking at the change in law for MedImmune and

16   looking at those three critical facts, it's very straightforward

17   to distinguish all of the cases that Eclipse relies on for its

18   contention that there is no jurisdiction here.  Those cases

19   either did not involve an indemnification agreement, such as the

20   Creative Compounds case, or didn't involve actual customers, such

21   as the Asahi Glass case, or no infringing activity, which is --

22   you know, happened in the Unisys case.  I mean, every case lacks

23   one of the three critical facts here.

24           So, not only has the federal circuit established that

25   there is -- there is liability, you know, I think that the recent

1  e-mail correspondence between the parties and the Court has

2  somewhat crystallized what the dispute is about.  And we've

3  identified, you know, that there are District Court cases in

4  addition that have found liability on exactly this ground.  As an

5  example, I would submit *Financial Fusion vs. Ablaise* is a case

6  from the Northern District of California in 2006.  And I quote

7  from that case, "FFI has alleged the existence of an indemnity

8  agreement between itself and its customers.  This allegation is

9  sufficient to satisfy the reasonable apprehension prong."

10        Now, that was a pre-MedImmune case under the former

11  standard, but even under the change in law, declaratory judgment

12  jurisdiction is easier to find now.

13        THE COURT:  All right.

14        MR. MELVIN:  So, Eclipse has dealt with this problem,

15  the fact that there really is jurisdiction here, by providing a

16  covenant.  And there's no dispute between the parties that

17  Eclipse's covenant to FedEx eliminates the dispute between FedEx

18  and Eclipse.  The problem, however, is that Eclipse's covenant to

19  FedEx' customers is vacuous.  It provides absolutely no

20  protection for the actual actions that are at issue here, the

21  aforementioned e-mails that contain links that the customers

22  received from FedEx.

23        So, I think perhaps what's important is looking at what

24  the covenant covers and what it doesn't cover and looking at the

25  case law, I -- you know, I've identified another case from the

 1  District Court.  This case is *MetroPCS Communications vs. LEAP*

 2  *Wireless*.  And in that case, a covenant that did not include the

 3  customers of the plaintiff was insufficient, according to the

 4  court, and the court -- the court's language was because the

 5  covenant not to sue would not completely insulate MetroPCS from

 6  suit arising out of a possible infringement of the patent, the

 7  '183 patent, by an agent, dealer, customer or indemnitee, the

 8  court concludes that -- in the context of this case that the

 9  covenant does not divest the court of jurisdiction.

10          Now, in that case there was no threat against a

11  customer and so the court ultimately found no jurisdiction.  But

12  here, as I mentioned, we do have threats.  We do have agreements.

13  And our customers understand the agreements to implicate -- to be

14  implicated by Eclipse's threats and suits.

15          As the federal circuit stated in *Revolution Eyewear vs.*

16  *Aspex Eyewear*, whether a covenant not to sue will divest the

17  trial court of jurisdiction depends on what is covered by the

18  covenant.  And as the recent correspondence, I believe, has sort

19  of pushed to the surface, the covenant here is inadequate.

20          Now, I don't think there's any doubt that Eclipse could

21  provide a covenant to divest the Court of jurisdiction, and we've

22  seen that in the recent *Already vs. Nike* case by the Supreme

23  Court.  The covenant provided by Nike in that case was absolute

24  and complete.  It covered all of -- all of Already's customers

25  and it covered any possible cause of action, and it was

1   essentially without any restriction.

2          I think another instructive comparison, as we pointed

3   out in our briefs, Your Honor, is the covenant that was adopted

4   by UPS and Eclipse in the earlier suit, declaratory judgment

5   suit, in this same district.  In that case, Eclipse surrendered

6   its claims against any customer of UPS to the extent of the

7   customer's use of UPS technology.  And that phrase is critical.

8   To the extent of is a very different phrase than the -- the

9   current covenant where Eclipse is intending to only protect

10  customers that use FedEx technology alone without any other

11  modification or addition.  And I think that does not recognize

12  the reality of how the customers use FedEx technology.

13         THE COURT:  What would be the other technology that you

14  would be using?

15         MR. MELVIN:  Oh, for example, e-mail.  The customers

16  receive a link, which is -- essentially it's just information.

17         THE COURT:  Right.

18         MR. MELVIN:  And they put it in an e-mail, which is a

19  commodity technology.  I mean, we're not talking about some

20  innovative other system that's added to this.

21         THE COURT:  I see.

22         MR. MELVIN:  You know, it's just that there are other

23  technologies involved in what the customer ultimately delivers to

24  the end user.  And --

25         THE COURT:  Is there anything else beyond the e-mail

 1  that -- that -- because you all surely have had some actual

 2  conversation and I -- about this.  So, is there any -- I guess,

 3  should the Court be aware that there's something else other than

 4  e-mail that is really driving the -- the differences in the -- as

 5  to your positions on the covenant?

 6          MR. MELVIN:  I cannot say how broad Eclipse's

 7  accusations of patent infringement have gone or will go.  I know

 8  that the statements in their complaints that we, for example,

 9  attached as exhibits to our complaint are incredibly broad and

10  could cover many different uses of FedEx information technology.

11  But as our customers use those technologies, they largely involve

12  some -- some modification or addition beyond what FedEx provides.

13          I will note that FedEx' claim -- excuse me, Your Honor,

14  Eclipse's claims here almost invariably -- well, I believe in

15  fact do invariably include a limitation roughly on the order of

16  communicating a notification or issuing a notification

17  communication or initiating a notification communication.  It can

18  take several forms.  But among the five patents, I believe they

19  all contain that limitation.  And that is exactly the -- the

20  e-mail or, you know, it could be a text message or any sort of --

21  I mean, I suppose there are various messaging technologies that

22  might all apply.

23          THE COURT:  Uh-huh.  Do you -- let me just -- so I make

24  sure I understand this case just factually, and this may seem

25  extremely basic, but let me make sure I understand.  Is there --

1  are you currently -- is FedEx currently paying some type of

2  licensing fee to Eclipse?  What is your current -- is there any

3  relationship between FedEx and Eclipse now just as to your usage?

4  You send out a link and you're using their software for that

5  link, or not?  This is your --

6          MR. MELVIN:  No, Your Honor.  FedEx uses its own

7  software that it developed for a long time.  That's correct.

8          THE COURT:  All right.

9          MR. MELVIN:  As far as I'm aware of, Eclipse does not

10  provide any sort of software or actual service.  They merely

11  assert patent rights.

12          THE COURT:  All right.  But are they asserting patent

13  rights in the actual notification system that you are using?  I'm

14  trying to understand -- it's extremely basic and it's really like

15  we're -- I'm -- it may be -- just seem very foolish to you

16  because you all are --

17          MR. MELVIN:  No, Your Honor.

18          THE COURT:  -- so I can understand this.  But they're

19  challenging the fact that you -- that you sent this information

20  to their customers and the customers may in fact then basically

21  appropriate it, the -- the information system that they're using

22  or the fruits of it.  If their claim is that you are infringing,

23  why isn't it just simply directly against you, against your

24  client?

25          MR. MELVIN:  Eclipse's claims have a number of

1   limitations.  Some limitations, for example, take the form of

2   monitoring travel data.  So, that is a limitation that FedEx

3   believes is performed entirely within the FedEx system.  Okay?

4          Now, another aspect of Eclipse's claims is the

5   notifications that are either triggered by that travel data or

6   include information about the travel data, they take a variety of

7   forms.  Those notifications may be sent by FedEx.  Such

8   notifications are no longer at issue because Eclipse has provided

9   a covenant to FedEx.

10          THE COURT:  That's what I'm trying -- so you have a

11   covenant on that part of it?

12          MR. MELVIN:  The parties are in agreement that that is

13   correct.

14          THE COURT:  All right.  All right.

15          MR. MELVIN:  And we no longer contest that the Court

16   has jurisdiction over FedEx' isolated use of Eclipse's claims,

17   whatever that use theoretically could be.  That's right.

18          But FedEx' customers perform certain aspects of the

19   systems alleged by Eclipse -- you know, asserted by Eclipse.  And

20   FedEx performs other aspects of those systems.  And that's the

21   activity that Eclipse is targeting.  And Eclipse takes the view

22   that its covenant need only cover FedEx' actions alone, not any

23   actions by the customer.

24          And it's FedEx' position, Your Honor, that the law

25   provides no basis for that distinction.  Either Eclipse's

1  covenant eliminates the possibility of a legal dispute between

2  FedEx and its customers; in that case, there is no jurisdiction.

3  Or, the covenant does in fact go that far and there is

4  jurisdiction.

5          THE COURT:  All right.

6          MR. MELVIN:  And thus far the covenant has not gone

7  that far.

8          I think that Eclipse looks at covenant case law and --

9  you know, for instance, the seminal case Super Sack in the

10  federal circuit, it's true that covenants have limits to how far

11  they must go to deprive the court of jurisdiction.  In Super

12  Sack, the issue was future products that did not exist at the

13  time of the covenant.  And, so, the court held that such future

14  nonexistent products need not be covered by a covenant.

15          That's not the dispute here.  The dispute here is about

16  actual activities by FedEx' customers.

17          I mean, I think that, you know, we've gone -- we have

18  gotten to the point where we've given Eclipse an example of what

19  we believe would be enough, and they've refused to do so because

20  Eclipse would like to maintain the ability to sue FedEx'

21  customers for the activities that FedEx' customers are currently

22  performing.  And -- and that just -- you know, it simply -- maybe

23  I should -- with Your Honor's permission, in the Revolution case,

24  a quote comes to mind.  It says, "In contrast, Revolution offered

25  no covenant on the current products stating it is in fact

1  obligated to repudiate suit for future infringement.  We agree

2  that such is its right.  However, by retaining that right,

3  Revolution preserves this controversy at a level of sufficient

4  immediacy and reality to allow Aspex to pursue its declaratory

5  judgment counterclaims."

6          That, I think, is where we're at right now.

7          THE COURT:  All right.

8          MR. MELVIN:  If there are no further questions --

9          THE COURT:  Not at this moment.  Thank you very much.

10 Let me first hear from Mr. Fredrickson, I guess.

11         MR. FREDRICKSON:  Thank you, Your Honor.  Thank you,

12 Your Honor.  Eclipse respectfully requests that the Court grant

13 its motion for --

14         THE COURT:  All right.  Let me just stop you for one

15 second.  The court reporter is fabulous, but she cannot go that

16 fast.

17         MR. FREDRICKSON:  Not that fast?  Understood.

18         In this case, FedEx does not argue that Eclipse's

19 actions with regard to FedEx itself give rise to an actual case

20 or controversy.  FedEx' allegations regarding Eclipse's

21 enforcement action with non-parties cannot give rise to an actual

22 case in controversy for at least four reasons, Your Honor.

23         First, under *Super Sack vs. Chase Manufacturing*, the

24 federal circuit has held that a covenant not to sue eliminates

25 the existence of an actual controversy between the parties.  The

1   reason for that, Your Honor, is because with no underlying cause

2   of action that Eclipse could bring against FedEx, there cannot

3   possibly be adverse legal interests as stated in MedImmune, and

4   contrary to FedEx' argument that the Supreme Court's decision in

5   MedImmune did not change the effect of a covenant not to sue.  In

6   fact, Your Honor, the federal circuit has repeatedly and

7   expressly reaffirmed its precedent regarding covenants not to sue

8   in the years since MedImmune.

9           FedEx points to *Arris Group vs. British Telecomm*, but

10  in that case the patentee did not provide a covenant not to sue

11  for indirect infringement, which here, however, Eclipse has given

12  a covenant not to sue for indirect infringement to FedEx.

13          THE COURT:  Well, I guess the question is the scope of

14  that covenant not to sue.  Isn't that the issue?

15          MR. FREDRICKSON:  Well, Your Honor, in Arris Group the

16  covenant was -- the covenant did not include a covenant not to

17  sue for indirect infringement to the actual party to the case,

18  not talking about the customers.  So, Arris and the court

19  expressly held in fact that applying the standard in MedImmune,

20  there's an actual controversy between Arris and BT, the parties

21  to the case, concerning Arris' liability for at least

22  contributory infringement.  There's no such controversy between

23  FedEx and Eclipse, Your Honor.

24          THE COURT:  Well, there seems to be, though, because

25  your -- tell me how the covenant reaches their customers.  I'm --

1    I'm not clear what you're -- what you're arguing.

2              MR. FREDRICKSON:  Well, Your Honor, I can --

3              THE COURT:  What your distinction is exactly based on

4    the facts here.

5              MR. FREDRICKSON:  I can tell you how the covenant

6    reaches the customers, but the point is before we even talk about

7    the customers in Arris Group, the patentee didn't provide a

8    covenant that protected the defendant -- the declaratory

9    plaintiff in this suit from contributory infringement.  So, it

10   was the actual party to the suit, not that party's customers that

11   the court found there is -- there is a controversy between.

12             THE COURT:  All right.

13             MR. FREDRICKSON:  But Eclipse has given FedEx an

14   irrevocable covenant not to sue, including for indirect

15   infringement, and that's unlike the patentee in Arris Group.

16             And second, Your Honor, FedEx points to the Supreme

17   Court's decision in a trademark case *Already vs. Nike*.  That case

18   is similarly distinguishable from this situation.  There Nike

19   sued Already for trademark infringement and then sought to moot

20   the case under the voluntary cessation doctrine which the Supreme

21   Court laid out in --

22             THE COURT REPORTER:  I need you to repeat that, that

23   case.

24             MR. FREDRICKSON:  Oh, Laidlaw Environmental Services.

25   It's actually *Friends of the Earth vs. Laidlaw*.

1       That line of cases involved mootness and the voluntary

2  cessation doctrine, which is separate and distinct from the Super

3  Sack line of cases, Your Honor.

4       So, Your Honor, the federal circuit has held that

5  without an underlying legal cause of action that the patent

6  holder could bring against the declaratory plaintiff, there

7  cannot be a case in controversy between the parties.  But, even

8  assuming that FedEx' alleged duty to indemnify a customer could

9  create a case for controversy between Eclipse and FedEx,

10  Eclipse's covenant provides ample protection to FedEx customers.

11  On this issue, Your Honor, FedEx' own pleadings are instructive.

12       As FedEx noted, they've filed with the Court an

13  example -- well, what they represent is an example of

14  indemnification obligations.  Now, Your Honor, that agreement in

15  Section 11(b) states, "The foregoing indemnity shall not apply to

16  any infringement claim arising from, (1), modification of the

17  application that's the FedEx product by anyone other than FedEx;

18  (2), use of the application in conjunction with developer or any

19  third-party data where use of such data gave rise to the

20  infringement claim; and, (3), use of the application with

21  software or hardware not provided by FedEx.

22       So, in other words, Your Honor, the combination

23  exception that's in Eclipse's covenant not to sue is in fact

24  narrower than the combination exception to FedEx' obligation to

25  indemnify its customers.  So, Eclipse has provided a covenant

1  that essentially provides that Eclipse will not file a --

2          THE COURT:  All right.  Now, I think that you've got to

3  tell me where -- where am I -- tell me where the covenant is so

4  that I have it in front of me that you're referencing.

5          MR. FREDRICKSON:  I will get it, Your Honor.

6          THE COURT:  Because we've had a lot of things shared

7  back and forth, and I don't know if you're talking about

8  something that was sent by e-mail or something that's already in

9  the record.

10          MR. FREDRICKSON:  May I approach, Your Honor?

11          THE COURT:  Yes.

12          MR. FREDRICKSON:  The highlighted language, Your Honor,

13  is FedEx' -- is a carve-out from FedEx' indemnification

14  liability.  And the other document is Eclipse's covenant not to

15  sue.

16          THE COURT:  What is proffered?

17          MR. FREDRICKSON:  I'm sorry?

18          THE COURT:  I'm sorry.  The document with the blue

19  stickies is --

20          MR. FREDRICKSON:  Yes.  That is the agreement that

21  FedEx filed as Exhibit 1 to the affidavit of Jimmy Phillips.

22          THE COURT:  All right.  And this is the agreement they

23  have with their customers?

24          MR. FREDRICKSON:  Yes.  That's my understanding, Your

25  Honor.

1        THE COURT:  And, then, the March 5th, 2013 letter is

2  what you've offered as the covenant; is that right?

3        MR. FREDRICKSON:  Yes, Your Honor.

4        THE COURT:  All right.  About which there's no

5  agreement?

6        MR. FREDRICKSON:  Well, Your Honor, the parties don't

7  have to agree because the case law holds that --

8        THE COURT:  I'm not -- I understand that.  I'm just

9  saying there's no agreement.

10        MR. FREDRICKSON:  Well, yes, FedEx disagrees.  Yes,

11  that's right, Your Honor.

12        THE COURT:  All right.  All right.

13        MR. FREDRICKSON:  And you'll see, Your Honor, that the

14  carve-out to FedEx' indemnification obligation is in fact broader

15  than the combination exception that Eclipse included in its

16  covenant not to sue.  Eclipse's covenant requires that the FedEx

17  customer actually practice an element of a patent claim, whereas

18  the carve-out to the FedEx indemnification obligation merely

19  requires the use of the application with any software or hardware

20  not provided by FedEx, even if that software or hardware doesn't

21  perform a step of the patent claim.

22        THE COURT:  Well, what -- tell me for the non-patent

23  lawyer, what exactly does the last sentence in your letter of

24  March 5th mean when you use the language, "This covenant shall

25  not preclude a claim for patent infringement against the FedEx

1  customer where the infringement allegation includes a step or

2  element of a patent claim that is performed or implemented solely

3  by the customer or its agent"?  Tell me in kind of more grounded,

4  common-sense language for those who don't live in the world of

5  patents day in day out, what does that sentence mean?

6          MR. FREDRICKSON:  It means simply, Your Honor, that if

7  the FedEx customer combines the FedEx technology with technology

8  of its own to form the entire system, that that system is not

9  protected by this covenant.

10         THE COURT:  All right.  And would that mean if the

11 individual e-mails it to somebody else, that that is taking it --

12 that's the addition and that would make it -- basically deprive

13 them of protection?

14         MR. FREDRICKSON:  If the customer is the one initiating

15 the e-mail and that e-mail infringes, then, yes, Your Honor.

16         THE COURT:  All right.  So, let's just -- give me an

17 example of what would be an infringement from your perspective

18 under that view and then let's do the same thing -- then we can

19 go back and look at the language in the carve-out.

20         MR. FREDRICKSON:  Under our covenant not to sue, Your

21 Honor?

22         THE COURT:  That's right.

23         MR. FREDRICKSON:  Well, frankly, Your Honor, I'm not

24 sure that Eclipse is aware of this situation existing because --

25 and I was planning to get to this, but Eclipse has not targeted

1   the FedEx tracking links in these e-mails, has not accused them

2   of infringement.  Hypothetically, Your Honor, if there's an

3   infringing notification and FedEx provided some data that the

4   customer relied on to initiate that notification, I guess that

5   would not be protected by the covenant.

6           THE COURT:  All right.  Just -- all right.  FedEx sends

7   a link to Bed Bath & Beyond.  That's their customer.  Or it might

8   be that I'm the customer and I've bought something from Bed Bath

9   & Beyond.  And I'm not clear about which one or whether both of

10  us are the problems or not, but -- because obviously I -- you

11  know, I bought the item on Bed Bath & Beyond and they're sending

12  the items by FedEx, so I don't know which one of us are the

13  customers at that point.  But -- so let's say FedEx -- at that

14  point the Bed Bath & Beyond is because they've already charged me

15  for the bath mats I've ordered.  So, are they infringing when

16  they e-mail me the link, the FedEx link?  I just want to be

17  absolutely sure I understand what this -- what's involved here.

18          MR. FREDRICKSON:  No, Your Honor.  And that's where,

19  frankly, Eclipse is also confused, because as FedEx points out,

20  some of the -- some but not all of the patent claims include a

21  step that is something like monitoring travel data.  Now, if a

22  customer has a link to look at shipment progress, we're not suing

23  the customer for infringement.  It's the -- it's the retailer who

24  must be monitoring travel data in some way, and we've never

25  alleged that that data came from FedEx.

1          THE COURT:  All right.  So --

2          MR. FREDRICKSON:  So we --

3          THE COURT:  The case -- where you have made threats of

4   litigation, where -- tell me about the nature of those cases so

5   that I -- I'm just trying to really understand what this case is

6   about and what the problems are and -- about the covenant.  And I

7   don't think I'm going to get it until I get -- sort of can truly

8   envision in concrete terms how does it arise.  You know, what

9   happened -- what happens that cause hackles for your client?

10          MR. FREDRICKSON:  Okay.  Thank you, Your Honor.  For

11  these five patents, Eclipse has asserted them against certain

12  types of notification communication systems, which can include

13  e-mails, and as FedEx pointed out, it can include other things.

14  Now, some of these communications --

15          THE COURT:  But you just told me it doesn't involve

16  e-mails.  That's why I don't understand.

17          MR. FREDRICKSON:  No, I'm sorry.  It involves e-mails.

18  It doesn't involve the FedEx link in the e-mail.  It involves

19  other information.  The e-mails typically under two of the

20  patents-in-suit contain authentication information, which is

21  information that gives the customer confidence that the e-mail

22  came from who it claims to have come from.  And the other -- the

23  other patents provide for systems and methods for responding to

24  these communications and taking various actions, such as changing

25  your contact data, your e-mail address, your phone number, or

1   making a change to the order.

2           I think -- I think where the confusion is coming in is

3   that some of these communications in some of the patent claims,

4   but not all, must be based on monitoring travel data.  That's one

5   of the steps in the claim that the -- in this case a FedEx

6   customer has to perform or they have to have a system that meets

7   that element.

8           THE COURT:  So, what is involved in monitoring travel

9   data?

10          MR. FREDRICKSON:  Well, it could be a number of things,

11  Your Honor, but it's -- in all of the cases that we're aware of,

12  it has been the customer's computers monitoring various types --

13  the FedEx customers' computers, not the retail customer,

14  monitoring certain types of information about the order.  But

15  it's not necessary to provide a link to the retail customer that

16  shows them the shipment status.  That's -- if it were not -- if

17  it were FedEx that was monitoring the travel data, then we

18  wouldn't have a claim for direct infringement against these

19  online retailers.  So, we're alleging the online retailers

20  monitoring the travel date and the FedEx link frankly is

21  irrelevant to Eclipse.

22          THE COURT:  All right.  So, again, and -- let's go back

23  to the threats of litigation against the customers.  In what

24  cases have the -- what are the circumstances of the cases where

25  you have threatened litigation, your client?

1          MR. FREDRICKSON:  It is cases where these online

2    businesses send certain types of communications that contain

3    certain types of information and enable them -- and are able to

4    receive a response to that communication.

5          THE COURT:  All right.

6          MR. FREDRICKSON:  And then take some action based on

7    that response.  But, Your Honor, it has not involved the FedEx

8    tracking.

9          THE COURT:  It's -- let me give you -- talk with your

10   co-counsel for one minute and just talk about how you may explain

11   this to me a little bit more graphically.  Pretend I'm less

12   sophisticated in technology and have never in fact even involved

13   myself in a computer transaction, which I have bought a lot of

14   things over -- online, but I -- and so -- but I really do need

15   you to explain this, not just in terms of this communication and

16   that.  Give me a basic example so that I can understand what the

17   concerns of your client are, what is the additional technology

18   that you're talking about, because I feel like, you know, you're

19   endeavoring to do it, but somehow the -- the language is not

20   coming through to me.  Okay?

21         MR. FREDRICKSON:  Understood.

22         (A pause in the proceeding was had.)

23         MR. FREDRICKSON:  If I may, Your Honor.

24         THE COURT:  Yes.  And I don't mean to embarrass you.  I

25   think this is one of the great challenges for everyone in a

1   technical field, how to communicate to those who are not

2   completely in that technical field and to make it more

3   accessible.

4            MR. FREDRICKSON:  I will give it another stab.  So,

5   what we're talking about, Your Honor, is not just someone sending

6   an e-mail.  These are complex computer systems the online

7   retailers use to take in certain information from the customers

8   and then send out certain information to them and in some cases

9   again receive more information.  Now, for a concrete example of

10  someone who Eclipse would allege infringes one or more claims of

11  one of the patents-in-suit -- also, I guess I should point out

12  that each of these patents has multiple claims which are separate

13  inventions, so it's hard to paint it with a broad brush here.

14           THE COURT:  All right.  But you're giving me an

15  example, one or two examples.

16           MR. FREDRICKSON:  That's -- one concrete example, if

17  you place an order online and you get an automated e-mail -- not

18  an e-mail from a person, it's automated from a system -- that

19  contains, for example, an order number that you can click on to

20  go to that web site and look at the status of your order, Eclipse

21  would allege that that infringes.

22           THE COURT:  So, the -- the capacity to click on the --

23  on the shipment orders in the -- because it -- other than to give

24  you the number -- it's not the transmittal that -- of the link.

25  It's the actual -- the fact that it is a link that -- and it

 1  provides information as to the location that it's now in Chicago
 2  on a truck coming to Atlanta?
 3          MR. FREDRICKSON:  Well, no, Your Honor.  Two points.
 4  First of all, it is the transmittal and the providing of the
 5  information, because they are multiple -- they are different
 6  steps in the same patent claim that must be satisfied.
 7          THE COURT:  But I thought you told me before that
 8  e-mail wasn't the problem.
 9          MR. FREDRICKSON:  No.  Eclipse alleges that certain
10  types of automated e-mails infringe the patents-in-suit.
11          THE COURT:  All right.  Which ones do and which ones
12  don't?
13          MR. FREDRICKSON:  Well, it's hard to say given all the
14  claims in the patents, but given -- but one example is if it
15  provides an order number that you were previously provided so
16  that you know, yeah, this is my order, this is legitimate,
17  someone isn't trying to spam me.
18          And to your other point, Your Honor, it is not that it
19  provides the customer the location of the shipment.  I -- that
20  has been irrelevant to Eclipse's lawsuits.
21          THE COURT:  Oh, I thought you were saying that the
22  monitor -- travel monitoring was what the problem was before.
23          MR. FREDRICKSON:  Well, I think that's where the
24  misunderstanding is between the parties.  But Eclipse has not
25  alleged that monitoring the actual shipment, once it's in the

1    carrier's possession, is what infringes.

2            THE COURT:  What is it that infringes?

3            MR. FREDRICKSON:  Well, as one of the steps of a claim

4    that has that limitation, monitoring travel data, it would be

5    information that the retailer has about the status of that order.

6    And in most -- before we file a suit, it's hard to say where that

7    information would come from, and that's why Eclipse isn't going

8    to give a covenant that broadly prevents Eclipse from suing any

9    FedEx customer for basically any reason.

10           THE COURT:  Okay.  All right.  So let's go and look --

11   you were making a point about what -- why your letter was --

12   provided more protection than was really needed even because the

13   indemnification agreement that FedEx had with its customers was

14   so broad itself that it was protected.

15           MR. FREDRICKSON:  That's right.  The exception to --

16           THE COURT:  All right.  So let's look at the

17   indemnification agreement that they have and tell me again now

18   what you're focused on and then we'll -- all right?

19           MR. FREDRICKSON:  Sure.  Where it begins, Your Honor,

20   "The foregoing to indemnity shall not apply to any infringement

21   claim arising from," and then frankly we can skip right to number

22   (iii) because I think that's the broadest.

23           THE COURT:  Okay.

24           MR. FREDRICKSON:  And it is use of the application

25   with software or hardware not provided by FedEx.

1          Now, if a customer performs a step or practices an

2    element under Eclipse's covenant not to sue, they have to be

3    using additional software or hardware.  So, it's not possible for

4    Eclipse to make a claim under that covenant not to sue that

5    doesn't also fall under this exception to FedEx' indemnification

6    obligation.

7          THE COURT:  Well, maybe we should talk about that

8    assertion a little bit more and then let me hear some -- so --

9    from the -- again, from the defendants, unless you have something

10   significantly that we haven't covered.

11         As I understood what you were just saying about the

12   extra steps, basically almost anything could be an extra step.

13   So, if I were looking at this and I'm the customer, or frankly

14   I'm FedEx and I'm looking at Roman Numeral (iii), use of the

15   application with software or hardware not provided by FedEx, but

16   FedEx -- including develop a product.  But FedEx has the right to

17   send -- send the -- the link for -- that comes from the

18   application; right, or not?

19         MR. FREDRICKSON:  I'm sorry.  I'm not sure --

20         THE COURT:  What do you think -- tell me again, tell me

21   what you think FedEx at this point has the right to do with the

22   information that it has -- it sends out information to the

23   customer saying the order has been transmitted.  What -- what do

24   they have absolutely the right to do?  I want to be just as

25   crystal clear about that in my mind as possible.

1           MR. FREDRICKSON:  So let me make sure I understand the

2    question, Your Honor.  Are you asking me what FedEx has the right

3    to do without Eclipse filing a suit against the FedEx customer?

4           THE COURT:  Right.  Exactly.

5           MR. FREDRICKSON:  FedEx has the right to provide this

6    technology to those customers at however it wants.  It's if the

7    customer performs additional steps, if the customer combines it

8    with additional software or hardware, that Eclipse may still have

9    a claim.

10          THE COURT:  But the additional software/hardware in

11   fact might be an e-mail or it might just be clicking the link so

12   that it sort of gives them information as to where this -- the

13   status of the -- the transportation of the -- of the product?

14          MR. FREDRICKSON:  Yes, I believe so, Your Honor.

15          THE COURT:  All right.  All right.

16          MR. FREDRICKSON:  And the point is that if one of these

17   customers cannot perform or practice an element of the patent

18   claim without using software or hardware not provided by FedEx.

19          THE COURT:  All right.

20          MR. FREDRICKSON:  And lastly, Your Honor, I'm not sure

21   how much time I have left, but all of this, frankly, may be a

22   moot point because FedEx has not even alleged that in fact it is

23   obligated to indemnify these customers.  They've used vague

24   language like they may have liability under agreements or

25   customers have contacted them inquiring about indemnification.

1   And, so, Your Honor, I don't think that is a definite and

2   concrete dispute touching the legal interests of these parties.

3          And lastly, Your Honor, FedEx' conclusary allegations

4   that upon information and belief Eclipse has targeted FedEx

5   technology with its enforcement efforts is contradicted by the

6   exhibits to its own complaint which include three of Eclipse's

7   infringement notice letters.  And each of those letters -- the

8   first letter doesn't -- doesn't specifically identify infringing

9   functionality and the second two identify infringing

10  functionality that is clearly not provided by FedEx.  And, Your

11  Honor, the Eleventh Circuit has held that where a party's

12  exhibits contradict its general and conclusary allegations in the

13  pleading, the exhibits govern.

14         THE COURT:  All right.  What -- what is it in

15  particular about the exhibits that you're saying is

16  contradictory?

17         MR. FREDRICKSON:  Your Honor, Exhibits F, G and H

18  are -- are infringement notice letters from Eclipse.  The first

19  letter, Exhibit F, is to Bass Pro Shops, and the section that

20  describes the infringing functionality simply does not mention

21  FedEx.

22         And Exhibit G, a letter to BrickHouse Security, more

23  specifically identifies the infringing functionality, but -- at

24  least the link that gives Eclipse evidence of infringing

25  functionality, and that link is a link to BrickHouse Security's

1  own online store, not to FedEx' web site.

2          And that's the same situation with Exhibit H, a letter

3  to -- to 1st in Video-Music World.  And that letter specifically

4  identifies links to that merchant's own web site and to the

5  United States Postal Service.  And, Your Honor, the Eleventh

6  Circuit has held that where these exhibits contradict FedEx'

7  conclusary allegations in its pleadings, the exhibits govern.

8          THE COURT:  I have a few questions -- do you have

9  anything more you want to cover?

10          MR. FREDRICKSON:  If there are no further questions,

11  Your Honor, I do not.

12          THE COURT:  All right.  I had a few questions, which

13  was what if the e-mail sent by the customer infringes because of

14  the technology that FedEx provided?

15          MR. FREDRICKSON:  Well, it's difficult to know.  You

16  mean by infringes, because of the technology FedEx provided.  If

17  the purpose of this covenant is that if the customer has taken

18  the FedEx technology and combined it with its own technology to

19  form a cohesive system, then the -- Eclipse can still sue for

20  that system for infringement.

21          THE COURT:  But essentially if the customer uses the

22  FedEx technology as it's intended, as sort of an instrument of

23  commerce, the merchant would face a threat of patent

24  infringement, wouldn't it, because it's really -- it's a

25  notification system and, therefore, by the very fact that it

1  actively uses the link, that would essentially result in -- under

2  your view would be a violation of the -- of your patent rights?

3          MR. FREDRICKSON:  Well, Your Honor, again, I would like

4  to point out that Eclipse has not alleged that the FedEx tracking

5  link constitutes evidence of infringement.  But to your point,

6  even if we say that hypothetically it does, how -- how that --

7  that system is intended to be used by FedEx is not relevant

8  because Eclipse has given FedEx a covenant not to sue, including

9  for induced infringement.  So, even if FedEx expressly says that

10  it intends this service to be used to infringe the Eclipse

11  patents, Eclipse has no recourse.  There's still no dispute

12  between Eclipse and FedEx.

13          THE COURT:  How would the customer use the technology

14  that FedEx provides it except as basically in combination with

15  its own software?  I'm not quite sure.  What would be the -- how

16  would they use it?  Just tell me, what's the purest statement of

17  how they would use it?

18          MR. FREDRICKSON:  Well, Your Honor, I think that's

19  exactly the point, because we're talking about these FedEx

20  tracking links that FedEx has brought up, but that is not

21  Eclipse's concern here.  Eclipse has not alleged that those

22  infringe the patents.  Instead, Eclipse is merely concerned about

23  any other technology that FedEx may have that is incorporating to

24  a system that Eclipse isn't aware of.

25          THE COURT:  All right.  I'm just trying to figure out

1    if they send me the link, back to that again, what else would one

2    use -- one doesn't just look at a link.  One -- it's going to be

3    used in combination with something else.  If Bed Bath & Beyond

4    wants to send me the link, they're going to -- by -- you know, I

5    guess it would be natural that they would be combining it with

6    something else.  I'm trying to think about any circumstance that

7    wouldn't be combined with the -- with Bed Bath & Beyond's own

8    software in some way.  Can you -- if you can tell me, that would

9    help clarify things.

10            MR. FREDRICKSON:  No, I don't think so, Your Honor, for

11   this type of -- for this package tracking link.  But, again,

12   that's not what Eclipse is alleging infringes the patent.  It

13   would be if Eclipse -- if FedEx is providing some other service

14   and Eclipse isn't privy to all of FedEx' technology that is

15   incorporated into a system, Eclipse just can't give away that

16   covenant blindly.

17            THE COURT:  All right.  All right.  Thank you very

18   much.

19            I'm going to hear from defendant's counsel, but I'm

20   going to take a 5 minute break.  All right?

21            MR. MELVIN:  Yes, Your Honor.

22            (A recess was had.)

23            THE COURT:  Please have a seat.

24            Okay.  Mr. Melvin, what do you say about this

25   indemnification agreement that you -- that FedEx uses?  It does

1  seem very broad.

2          MR. MELVIN:  Well, Your Honor, I would note that under

3  the case law, there's no requirement that the Court construe a

4  contract between a customer, a supplier and its customers, in

5  order to establish that there is customer liability jurisdiction.

6  That's point number one.

7          And point number two, that the agreement that Eclipse

8  is pointing to is actually only one of two agreements that FedEx

9  provided as examples of the many.  Exhibit 2 to the same

10 declaration of Jimmy Phillips contains language that FedEx

11 represents it shall provide the services omission so as not to

12 infringe any patent.  There is no exclusionary language in this

13 other agreement.  And I think that these two agreements

14 illustrate the range of --

15         THE COURT:  And do you use other ones as well with

16 other customers?

17         MR. MELVIN:  That's absolutely true.  FedEx -- it's my

18 understanding at least that FedEx negotiates each of these

19 agreements individually.  There's not a consistent forum that --

20         THE COURT:  And is there always an indemnification

21 agreement of some sort or not?

22         MR. MELVIN:  Well, no, Your Honor, because any

23 individual could ship a package with FedEx and receive many of

24 the same information services from FedEx.  It's my understanding

25 that certain large customers receive different grades of service

 1   and/or different -- you know, perhaps different services, but --

 2   but --

 3          THE COURT:  Let me ask you this sort of concrete

 4   question as well.  In reality, is your software, when you --

 5   intended to be used by the customers in conjunction with their

 6   own software?

 7          MR. MELVIN:  Absolutely, Your Honor.  What FedEx

 8   provides in some cases is software itself.  What FedEx provides

 9   in other cases is just data or information about shipments.  And,

10   so, customers can use their own systems to access FedEx systems

11   and obtain data about packages.  And they may also -- there are

12   some certain FedEx systems that are in place at customers, and so

13   it covers both styles of communication.

14          THE COURT:  But generally speaking, you have the

15   expectation, or FedEx has the expectation, that there will be

16   some interactivity between the customer's software --

17          MR. MELVIN:  Absolutely, Your Honor.

18          THE COURT:  -- and that of what -- the software that

19   you're basically relaying the tracking information?

20          MR. MELVIN:  Yes, Your Honor.  That's absolutely

21   correct.

22          THE COURT:  Now, Mr. Phillips' affidavit in paragraph

23   10 says that Macy's specifically requested indemnification for

24   any liability stemming from Eclipse's claims for patent

25   infringement.

1        MR. MELVIN:  Yes, Your Honor.

2        THE COURT:  Do you happen to have any knowledge about

3  whether it was -- the Macy's situation arose with this -- the use

4  of the language in the patent -- a Section 11 indemnification

5  language that was provided by Mr. Fredrickson or was it -- or do

6  you know?

7        MR. MELVIN:  Well, Your Honor, I believe that that

8  agreement with the Section 11 is not an agreement with Macy's,

9  but in fact the other agreement that I just referred Your Honor

10  to, Exhibit 2, is in fact an agreement with Macy's.

11        THE COURT:  All right.  So, you would point, then --

12  and probably should point if you're proceeding in this, if I

13  allow you to proceed in this complaint -- in your complaint to

14  Macy's as a customer who has been expressly threatened with suit

15  by Eclipse and where you would be -- end up being on the hook

16  through the indemnification arrangement?

17        MR. MELVIN:  Well, it is true, Your Honor, that we have

18  identified specifically Macy's as one customer.  I would contend

19  that FedEx need only identify one customer, but that of course

20  does not preclude the fact that there are other customers --

21        THE COURT:  But you have at least one customer --

22        MR. MELVIN:  That's correct.

23        THE COURT:  -- where in fact you're not -- don't have

24  the protection of such a broad agreement as the one that Mr.

25  Fredrickson pointed out?

1          MR. MELVIN:  Well --

2          THE COURT:  And we'll discuss --

3          MR. MELVIN:  -- FedEx does not agree with Eclipse's

4     characterization of that agreement and --

5          THE COURT:  All right.  All right.

6          MR. MELVIN:  -- believes resolving any such factual

7     dispute at this stage would be improper.  But it is true that we

8     do have one actual customer who's actually been threatened or

9     sued by Eclipse and has an actual agreement with FedEx that has

10    broad indemnification language in the service agreement.  That is

11    correct.

12         THE COURT:  Okay.  It's the other indemnification

13    agreement?

14         MR. MELVIN:  That's right.  I think it may be more

15    proper to call this service agreement --

16         THE COURT:  Service agreement.

17         MR. MELVIN:  With a warranty covenant or

18    indemnification clause.

19         THE COURT:  For purposes of the record, would you mind

20    just identifying what the documents is that you're saying --

21         MR. MELVIN:  May I approach, Your Honor?

22         THE COURT:  Yes.

23         MR. MELVIN:  I apologize I only have one copy, but

24    that --

25         THE COURT:  That's all right.  I just wanted -- if we

 1  go back, we can then refer to it.

 2          MR. MELVIN:  Absolutely.  It's Exhibit 2 to the

 3  declaration.

 4          THE COURT:  Declaration of Jimmy Phillips, Exhibit 2.

 5  All right.

 6          MR. MELVIN:  That's right.

 7          And if I may, Your Honor, I think a big problem here --

 8          THE COURT:  Why don't you let me just read this myself

 9  first; all right?

10          MR. MELVIN:  Yes.

11          (A pause in the proceeding was had.)

12          THE COURT:  And where in this -- in Exhibit 2 does it

13  tell me precisely where you are -- FedEx is commenting that it

14  would indemnify the customer in the event they were sued?

15          MR. MELVIN:  Well, I mean, I think the language is just

16  that FedEx shall provide its services so as not to infringe any

17  patent --

18          THE COURT:  All right.

19          MR. MELVIN:  -- and that contains, you know --

20          THE COURT:  Inherent in it?

21          MR. MELVIN:  That establishes the legal relationship

22  between --

23          THE COURT:  All right.  All right.

24          MR. MELVIN:  -- FedEx.

25          May I address two other points?

1          THE COURT:  Yes.

2          MR. MELVIN:  Okay.  I think a problem arises in the

3    uncertainty of what Eclipse is accusing.  Eclipse just told the

4    Court that it is not accusing an e-mail containing a link to a

5    FedEx -- a FedEx tracking link, and that the exhibits to FedEx'

6    complaint contain no such e-mail.  But, in fact, the recent

7    e-mail exchange that we had with Your Honor attached -- and this

8    is Exhibit G, page 5 of the exhibit, is an e-mail from BrickHouse

9    Security to one of its end-user customers and it contains a FedEx

10   tracking e-mail.  And this printout was part of Eclipse's threat

11   of infringement against BrickHouse Security.  So, for Eclipse to

12   tell the Court that it is not accusing this is a little bit

13   confusing, frankly.

14          Another thing that Eclipse stated was that an order

15   status link would be distinguished from a tracking link in an

16   e-mail.  And I believe the distinction was that the order status

17   link would come from the retail shipping provider such as Macy's,

18   whereas the tracking link would come from FedEx.  And I don't

19   believe there's any reasoned basis for such a distinction, and I

20   certainly didn't hear Eclipse explain one.

21          Another distinction that Eclipse made was that between

22   links and data.  Both links and data are provided by FedEx.

23   Links, of course, are a type of data.  They're considered a --

24   it's called a uniform resource locator, and it points a web

25   browser to a particular location on the Internet.  But the fact

1  that FedEx provides other data simply supports jurisdiction here.

2          I think those -- those are the points that are probably

3  most important.  I guess I've already talked about FedEx'

4  agreements.  And just in closing, we've seen again that the

5  appropriate covenant must eliminate the legal relationship

6  between FedEx and its customers, and they simply haven't done

7  that.

8          So, if the Court has no further questions --

9          THE COURT:  Okay.

10         MR. MELVIN:  -- we thank you.

11         THE COURT:  Thank you.

12         MR. FREDRICKSON:  Your Honor, as Movant, may Eclipse

13  have the last word?

14         THE COURT:  Yes.

15         MR. FREDRICKSON:  Thank you.

16         THE COURT:  Be brief, though.

17         MR. FREDRICKSON:  I will be.  Your Honor, under Exhibit

18  2, that agreement in fact expressly provides that FedEx is not

19  obligated to indemnify Macy's, but under the representation that

20  FedEx points to that FedEx shall provide services so as not to

21  infringe, Eclipse -- under Eclipse's covenant not to sue, it

22  cannot base a claim on the services as provided by FedEx.  It can

23  only base a claim --

24         THE COURT:  I'm sorry.  You're going to have to go

25  slower.

1          MR. FREDRICKSON:  I'm sorry, Your Honor.

2          THE COURT:  You can come up here also because you're

3    quiet enough.  Come up, stand up, come over here and go slower.

4          MR. FREDRICKSON:  Okay, Your Honor.  In Exhibit 2, the

5    agreement with Macy's, FedEx represents that it shall provide

6    services so as not to infringe any patent, while under Eclipse's

7    covenant not to sue, Eclipse cannot base a claim on the services

8    as provided by FedEx.  This is exactly the distinction we were

9    discussing earlier.  Eclipse can only base a claim on a system

10   that uses the customer's own technology such that it creates a

11   new and different product.  The services as -- as provided by

12   FedEx are protected by Eclipse's covenant not to sue.  And,

13   again, that -- that agreement expressly provides that there's no

14   indemnification liability for FedEx.

15          Now, Your Honor, you asked FedEx and FedEx has said

16   that they expect customers to use the FedEx services in

17   combination with their own software, and there's nothing wrong

18   with that, Your Honor.  As an initial matter, that doesn't mean

19   that this Court has jurisdiction over this case.  But as a second

20   point, those customers -- even if we expect them to use the FedEx

21   services with their own software, they don't have to use software

22   that infringes valid patents just to use FedEx services.

23          So, it's sort of a red herring to say that they expect

24   the FedEx services to be used with the additional software.

25   That -- they don't have to use additional software that infringes

1    Eclipse's patents.

2          THE COURT:  But it seemed from our discussion, Mr.

3    Fredrickson, that there were a broad range of activities.  Almost

4    any use of the information that FedEx transmits would potentially

5    violate your patent.

6          MR. FREDRICKSON:  I'm sorry if I was unclear, Your

7    Honor.  I don't think that that's the case.

8          THE COURT:  Well, I kept on trying to elicit

9    information that would tell me when it wouldn't, and basically it

10   seemed like ultimately Eclipse's position is that you can --

11   FedEx can send the information, but the customer can't do

12   anything with it, because to do anything with it was likely going

13   to potentially trigger a violation of your rights because it

14   apparently will touch on a number of the application processes

15   or -- that you have patented according to -- at least according

16   to your view.

17         MR. FREDRICKSON:  Oh.  Well, Your Honor, what I was

18   discussing was an e-mail from the FedEx customer, any kind of

19   communication that otherwise infringes, if it's -- if it contains

20   FedEx technology, it still infringes under this covenant not to

21   sue, even if it -- so if the communication infringes absent the

22   FedEx information, once they add the FedEx information, it's

23   still going to infringe.  But not all e-mail communications

24   infringe Eclipse's patent, Your Honor.

25         THE COURT:  Well, what wouldn't?

ELISE SMITH EVANS, RMR, CRR

1        MR. FREDRICKSON:  If -- frankly, Your Honor, it's hard

2   to say under the -- I think we're talking about well over a

3   hundred patent claims on different inventions here and Eclipse

4   doesn't frankly know which ones FedEx thinks are invalid.  I

5   mean, FedEx sued Eclipse, and we're not sure which claims we're

6   talking about here.

7        THE COURT:  All right.  Well, and I understand that.

8   But I'm just trying to understand what type -- once FedEx sends

9   its information to a customer, tell me a situation, again, where

10  the customer wouldn't likely end up violating one of their pat --

11  one of your patents if it -- except for basically -- if they

12  receive it, that's one thing.  But if they in any way transmit

13  the information or actively use it, it appears like that that's

14  going to result in a violation of one of these 100 patents.

15       MR. FREDRICKSON:  Well, Your Honor, we're only talking

16  about individual steps or elements of patent claims.  There are

17  additional elements that the customer still must perform.  So,

18  the customer can send an e-mail with FedEx information, but if it

19  doesn't meet the other steps of the patent claim, it still

20  doesn't infringe.

21       THE COURT:  So, again, can you give me a concrete

22  example of when that would not be infringement in that situation,

23  because I've asked you this in a variety of forms, so I'm once

24  again just trying once -- another stab at it.

25       MR. FREDRICKSON:  And I'm sorry, Your Honor.  The

1   reason it's difficult is because it depends on which patent claim

2   we're talking about, and we don't know frankly which ones FedEx

3   is talking about.

4           THE COURT:  Well, let's just talk about some --

5   whatever -- I mean, I obviously don't know which of the patents

6   are involved here for each one of these, but let's talk about

7   what -- one of the ones that you think is a primary one, that is

8   a -- one of the more crucial ones.

9           MR. FREDRICKSON:  Well, Your Honor, for example, just

10  forwarding an e-mail for FedEx would not infringe.  It is the

11  customer's own system that -- that communicates automated

12  notifications that has to be at play here.  So, if they're just

13  forwarding information from FedEx, that in itself can't infringe,

14  or at least we haven't alleged that it infringes.

15          THE COURT:  All right.  And if there is an automatic

16  generation, though, that would infringe?

17          MR. FREDRICKSON:  Not necessarily, but that's a

18  prerequisite, Your Honor.

19          THE COURT:  All right.  So what would be the next step

20  necessary for it to become an infringement?

21          MR. FREDRICKSON:  Again, I'm sorry, but it depends on

22  which patent and which claim.

23          THE COURT:  All right.  All right.

24          MR. FREDRICKSON:  If I may, Your Honor, the -- the last

25  point is FedEx pointed to Exhibit G, which -- that's the letter

| 1  | from Eclipse which contains an e-mail that in fact has a FedEx |
|----|
| 2  | tracking link.  But this is a perfect description of what I've |
| 3  | been trying to convey, which is this e-mail contains a FedEx |
| 4  | tracking link, but on page 6 of the exhibit, Eclipse specifically |
| 5  | identifies the portions of the e-mail that give evidence of |
| 6  | infringement and Eclipse specifically identifies Internet links |
| 7  | that are not to FedEx' web site.  And that is for three patents, |
| 8  | Your Honor, and then the remaining two don't identify any links. |
| 9  | THE COURT:  And the other two what? |
| 10 | MR. FREDRICKSON:  Don't identify any Internet links. |
| 11 | THE COURT:  All right.  Thank you very much. |
| 12 | MR. FREDRICKSON:  Thank you. |
| 13 | THE COURT:  All right.  Well, this has been helpful.  I |
| 14 | appreciate your coming and chatting with me about this.  We'll |
| 15 | try to get an order out in the next week on this.  And I don't |
| 16 | think that we need anything more at this juncture. |
| 17 | MR. MELVIN:  Your Honor, about the schedule, the |
| 18 | parties in the joint submission requested that the Court stay all |
| 19 | of the various discovery deadlines, but -- |
| 20 | THE COURT:  Well, under the local rules, while there's |
| 21 | a Motion to Dismiss pending, they are anyway, for all intents and |
| 22 | purposes, so -- |
| 23 | MR. MELVIN:  Okay. |
| 24 | THE COURT:  But we will rule in a week, so they're |
| 25 | stayed until we rule.  And if it's next week or the following |

1   week, but something like that, and we'll give you direction at

2   that point, depending on what the ruling is.

3          MR. MELVIN:  Thank you, Your Honor.

4          THE COURT:  All right?  Thank you very much.  I

5   appreciate it.

6          (End of proceedings.)

7                              * * * * *

8   UNITED STATES DISTRICT COURT

9   NORTHERN DISTRICT OF GEORGIA

10  CERTIFICATE OF REPORTER

11

12

13          I do hereby certify that the foregoing pages are a true

14  and correct transcript of the proceedings taken down by me in the

15  case aforesaid.

16          This the 24th day of May, 2013.

17

18

19

20                              _____
                                ELISE SMITH EVANS, RMR, CRR
21                              OFFICIAL COURT REPORTER

22

23

24

25